**WO**

1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| 9  Charlaine Helen Begay, | No. CV-21-08124-PCT-DLR (MHB) |
| 10           Defendant/Movant, | No. CR-18-08293-PCT-DLR |
| 11  v. | **REPORT AND RECOMMENDATION** |
| 12  United States of America, | |
| 13           Plaintiff/Respondent. | |

14

15 TO THE HONORABLE DOUGLAS L. RAYES, U.S. DISTRICT COURT JUDGE:

16       On May 26, 2021, Movant Charlaine Helen Begay, an inmate in the custody of the

17 U.S. Bureau of Prisons, Federal Correctional Institution, Dublin, California, filed[1] a Motion

18 to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 ("2255 motion"),

19 asserting several claims of Ineffective Assistance of Counsel. (Doc. 1.)  Respondent filed

20 a Response on August 19, 2021, (Doc. 8), and on September 7, 2021, Movant filed a Reply

21 (Doc. 13).

22                        **BACKGROUND**

23       On August 10, 2018, Movant was arrested on a criminal complaint charging her

24 with one count of Burglary, a felony offense. (CRDocs.[2] 1, 8.) Counsel Barbara Hull was

25 appointed to represent her. (CRDoc. 20.) On February 5, 2019, Movant was indicted along

26

27 [1] Movant placed her motion in the prison mailing system on that date. (Doc. 1 at 10.) That
is the operative date of filing, although the motion was not docketed until June 1, 2021.
See, Huizar v. Cary, 273 F.3d 1220, 1223 (9th Cir. 2001) (applying "prison mailbox rule"
in construing filing date).

28 [2] "CRDoc" refers to documents filed in the underlying criminal case.

with three co-defendants on seven felony counts: Conspiracy to Commit Kidnapping, First Degree Murder, Second Degree Murder, Kidnapping Resulting in Death, Robbery, Conspiracy to Commit Burglary, and Burglary, all felony counts. (CRDoc. 39.) Pursuant to a plea agreement, Movant pleaded guilty on September 30, 2019, to one count of Conspiracy to Commit Kidnapping and Aid and Abet, and one count of Second Degree Murder and Aid and Abet. (CRDoc. 88.) The plea agreement provided that Movant be sentenced to between 15 years (180 months) and 20 years (240 months) in prison. (Id.) On December 9, 2019, the Court sentenced Movant to 180 months in prison on each count, to be served concurrently, followed by five years of supervised release. (CRDoc. 89.) The judgment issued was amended on February 5, 2020 to add a restitution amount. (CRDoc. 108.) Movant did not appeal her judgment and sentence.

In Movant's 2255 motion, she states the following grounds for relief: (1) Ineffective Assistance of Counsel ("IAC") – failing to investigate and research witness accounts/statements; (2) IAC – failing to investigate Navajo Nation Records; and (3) IAC – failing to investigate important facts and Movant's claims regarding her participation in the crime. (Doc. 1.) Respondent in its Answer asserts that Movant's 2255 motion is untimely and should therefore be dismissed. (Doc. 8.)

**DISCUSSION**

I.      Statute of Limitations.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year statute of limitations period shall apply to a motion filed pursuant to 28 U.S.C. § 2255(f)(1), and "shall run from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the

claim or claims presented could have been discovered through the exercise of due diligence." A conviction becomes "final" when the time limit for filing a notice of appeal expires. See United States v. Schwartz, 274 F.3d 1220, 1223 (9th Cir. 2001). Under the federal rules, a criminal defendant has 14 days after judgment to file a notice of appeal. See, Fed. R. App. P. 4(b)(1)(A).

In the instant case, Movant was sentenced on December 9, 2019, but her judgment was amended to add a restitution amount on February 5, 2020. Construing the latter date as the date of her judgment of conviction[3], Movant had until February 19, 2020 to file a notice of appeal. As she did not do so, her statute of limitations ran on February 19, 2021, rendering Movant's 2255 motion untimely by over 3 months. Movant acknowledges that her 2255 motion is untimely, but proffers as an excuse various detention facility lockdowns that occurred at the detention facility due to COVID-19:

> Since April 1st, 2020 a national lockdown was initiated inside the entire BOP. Initially, due to the Covid-19 outbreak, we were isolated in our rooms/cells for months. We were gradually allowed showers, then email and phone privileges. No law library access. By September 2020 we were allowed to remain out of our cells, confined to our units. No access to the education of law library to obtain much needed forms and do research. I felt my lawyer failed me but could not obtain help to understand what she did wrong. Mail was sporadic at best, with staff sick and short. December/January 2021 we had a full blown outbreak, 280 inmates positive complete quarantine. In February 2021 I was finally able to discovery through due diligence the facts, procedure and law supporting my claims. As of 5/21/21 we are on quarantine again, due to another outbreak of Covid-19.

(Doc. 1 at 10.)

The statute of limitations may be equitably tolled in a 2255 action if "(1) the petitioner has diligently pursued his rights, and (2) extraordinary circumstances exist." United States v. Aguirre-Ganceda, 592 F.3d 1043, 1045 (9th Cir. 2010) (citing Pace v.

---

[3] The Court does so while acknowledging that some courts have interpreted "judgment" to be synonymous with the imposition of a custodial sentence. See Smith v. Williams, 871 F.3d 684, 687 (9th Cir. 2017) (citing Magwood v. Patterson, 561 U.S. 320 332 (2010) for the conclusion that "the judgment from which the AEDPA statute of limitations runs is the one pursuant to which the petitioner is incarcerated."). If the statute of limitation were to run from Movant's original sentencing date, when her custody was imposed, her 2255 motion would be untimely by over 5 months.

DiGuglielmo, 544 U.S. 408, 418 (2005)).   The burden of establishing entitlement to equitable tolling is on Movant.   Pace, 544 U.S. at 418.  Equitable tolling is available "only when extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time and the extraordinary circumstances were the *cause* of [the petitioner's] the untimeliness."   Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) (emphasis in original) (internal quotes and citation omitted).

The Ninth Circuit has found that a lack of access to legal resources may, under certain circumstances, merit equitable tolling. See, e.g., Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (finding that unavailability of legal materials in a prison law library could be grounds for equitable tolling). The Court has rejected however "the argument that lack of access to library materials automatically qualifie[s] as grounds for equitable tolling." Frye v. Hickman, 273 F.3d 1144, 1145 (9th Cir. 2001).  A prisoner must cite to specific materials or resources that were not available or were necessary for purposes of filing her 2255 motion. Canez v. Ryan, 25 F. Supp. 3d 1250, 1265 (D. Ariz. 2014). Additionally, even when an extraordinary impediment arises during the limitations period, a prisoner must still diligently pursue his rights "before, during, and after the existence of an extraordinary circumstance." Smith v. Davis, 953 F.3d 582, 593-595 (9th Cir. 2020) (en banc) (internal quotations omitted).

Respondent refutes Movant's claim that she could not file a 2255 motion on time because of lockdown restrictions or because she only recently became aware of the factual basis for her IAC claims. Movant was sentenced on December 9, 2019, and by Movant's own admission, the lockdown was not initiated until April 2020. Movant does not explain why she could not have filed a 2255 motion before then. Additionally, she was aware of the factual basis for her claims at the time she was sentenced. Movant's claims regarding her attorney's failure to investigation, research and obtain records, and her attorney's legal advice all involve facts known to Movant prior to her guilty plea. Movant claims that in February 2021 she was "finally able to discovery the facts, procedure and law supporting her claims," but does not provide any specifics as to what she became aware of at that time.

1   After this purported discovery, Movant then waited an additional several months to file her

2   2255 motion.

3        Additionally, Respondent refutes Movant's claims regarding the extent of the

4   "lockdowns" and the restrictions on her ability to access the prison law library. Respondent

5   attaches as an Exhibit to its Response an affidavit of Tess Korth, the Unit Manager of FCI

6   Dublin, Federal Bureau of Prisons. (Doc. 8-3.) Ms. Korth, in her declaration, indicated that

7   although the BOP implemented a COVID-19 Action plan on April 1, 2020 that mandated

8   certain actions that included a 14-day quarantine period, it required that "to the extent

9   practicable, inmates should continue to have access to programs and services that were

10  available to them during normal operating conditions." (Id., ¶ 4.)  Ms. Korth additionally

11  declared that:

12       5.   After this time, FCI Dublin moved its law library from the
         Education Department to the inmate computers, known as the Trust Fund
13       Limited Inmate Computer System (TRULINCS), in each unit so inmates
         could continue to have access to legal resources such as the Electronic Law
14       Library (ELL), an application within TRULINCS. *See* Att. 1, Program
         Statement 4500.12, *Trust Fund/Deposit Fund Manual* (excerpts) at 126.
15

16       6.   The TRULINCS provides inmates with a computer system that
17       does not jeopardize the safety, security, orderly operation of the
         correctional facility, or the protection of the public or staff. *Id.* Through
18       TRULINCS, inmates do not have access to the Internet. *Id.*

19
20       7.   The TRULINCS provides services to inmates such as: account
         transactions, bulletin board, contact list, postal mail address labels,
21       managing telephone contacts, public messaging application, managing
         funds, managing music service, managing TRU-Units, prescription
22       refills/consultation notifications, printing documents, electronic requests to
         staff members, and the ELL. *Id.* at 132-139.
23

24       8.   "Inmates use dedicated TRULINCS workstations to access the
25       ELL." *Id.* at 135.

26       9.   If and when a facility-wide quarantine was put in place at FCI
27       Dublin during 2020 or 2021, Unit Team members conducted daily rounds
         to inquire whether inmates needed access to any resources, including the
28       ELL. If an inmate requested access to the ELL, she was given the
         opportunity to use that resource.

- 5 -

10. At all times during the COVID-19 pandemic, inmates at FCI Dublin had access to the ELL through TRULINCS, or could request access through their Unit Team members.

11. Ms. Begay had access to the ELL through TRULINCS. Between April, 2020, and February 28, 2021, Ms. Begay spent 3,317 minutes on TRULINCS. *See* Att. 2, TRULINCS Activity Report (Apr. 1, 2020 – Feb. 28, 2021). Of those 3,317 minutes, Ms. Begay spent zero minutes on the ELL. *Id.*

12. In addition, between October 1, 2020, and August 16, 2021, she spent 10,643 minutes on TRULINCS. *See* Att. 3, TRULINCS Activity Report (Oct. 1, 2020, - Aug. 16, 2021). Of those 10,643 minutes, Ms. Begay spent four minutes on the ELL. *Id.*

(Doc. 8-3, ¶¶ 5-12.)

In Movant's Reply, she does not address Respondent's assertion that between April 2020 and February 28, 2021, she spent 3,317 minutes (approximately 55 hours) on TRULINCS that included zero minutes on ELL, or that between October 1, 2020 and August 16, 2021, she spent 10,643 minutes (approximately 177 hours) on TRULINC. (Doc. 13.) Movant clearly had access to the law library online but chose not to utilize it. Although in her 2255 motion she stated that because of COVID-19 lockdowns she was unable to print documents, in her Reply she states that she had access to a printer in November 2020. (Id. at 3.) Movant attaches a letter she received from the Federal Public Defenders' Office dated April 27, 2021, that indicates that Movant mailed a letter to that office requesting assistance on April 21, 2021. (Id. at 5.) This was 16-months after her sentencing, and after the statute of limitations had already expired in her case. Movant does not assert that she was unable to mail documents from the BOP before that date or at any time during the applicable time period, only that mail was "being delayed." (Id. at 3.)

\\\

\\\

\\\

\\\

Movant's unsupported and vague contentions regarding her inability to file a 2255 motion on time do not satisfy her burden of establishing her right to equitable tolling. As is clear from the Bureau of Prison's records, her contentions regarding lack of access to legal resources are belied. And, Movant fails to demonstrate that the factual basis supporting her claims are newly discovered.

## CONCLUSION

An evidentiary hearing is not warranted regarding Movant's claims, including equitable tolling, because the record is sufficiently developed to resolve the question of whether the motion is timely.  Movant's 2255 motion is untimely, and without excuse. Therefore, this Court will recommend that it be denied and dismissed with prejudice.

**IT IS RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) be **DENIED AND DISMISSED WITH PREJICE.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the 2255 motion is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. **The parties shall have fourteen days** from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the

district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

Dated this 20th day of October, 2021.

Honorable Michelle H. Burns
United States Magistrate Judge

- 8 -